**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADP, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JASON JACOBS,<br><br>　　　　　Defendant. | Civil Action No. 2:15-3710 (JLL) (JAD)<br><br>OPINION |

**LINARES,** District Judge.

This matter comes before the Court by way of Plaintiff's application for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The Court has considered the submissions made in support of and in opposition to Plaintiff's application, as well as the arguments presented by the parties at the oral argument held on July 20, 2015. For the reasons set forth below, Plaintiff's application is **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND**

Plaintiff ADP is a Delaware corporation with its principal place of business in Roseland, New Jersey. (Compl. at 1). Plaintiff provides business outsourcing and software to its many clients, including services relating to human resources, payroll, tax, and benefits administration. (Pl. Br., ECF No. 1-7 at 2). Until March 2015, when he was terminated, Defendant, Jason Jacobs (hereinafter "Defendant" or "Jacobs") was employed by Plaintiff. (Def. Br., ECF No. 11 at 1, Pl. Br. at 2). In his most recent position with ADP, Defendant served as a Senior District Manager in Austin, Texas. (Pl. Br. at 2). Prior to his termination, Defendant had been employed by Plaintiff

1

for eighteen years. (Def. Br. at 1).

Defendant's employment with Plaintiff began in September 1996 as a sales representative in the New York, New York area. (Pl. Br. at 6). As a condition of his employment, Defendant signed a Sales Representative Agreement, which contained post-termination restrictions. (Pl. Br. at 8). This Sales Representative Agreement purports to restrict Defendant's contact with Plaintiff's clients after termination, disclosure of a number of ADP's business practices, and use of current, former, and prospective client information. (Pl. Br. at 8-9). More specifically, the Non-Solicitation portion of the Sales Representative Agreement restricts Defendant's communications with "any Person which was a client or customer or bona fide prospective client of the ADP Group ... located within a 75-mile radius" of various territories Defendant managed during his employment at ADP. (ECF No. 1, Exhibit A ¶4).

In June 2003, Defendant began working as a Senior District Manager in Austin, Texas for a subsidiary of ADP called ADP TotalSource. (Pl. Br. at 6). Plaintiff alleges that Defendant's sales territory included 27 zip codes in the Austin area. (Pl. Br. at 6-7). Defendant asserts that at least six of the zip codes to which Plaintiff refers were not within his territory. (Def. Br. at 4). Plaintiff alleges that during Defendant's employment, he received specialized training that was unique to ADP and utilized, possessed, or was privy to "ADP's confidential business information, trade secrets, and other proprietary information," including the following:

> ADP business methods, procedures, pricing and marketing strategy, client information, including the names, addresses, preferences and needs of ADP clients, bona fide prospective clients, vendors and strategies, information regarding the terms of clients' contracts, clients' contractual terms, marketing partner information, including the names, addresses, preferences and needs of ADP's marketing partners, and employee information, including, but not limited to, sale information, compensation plan and performance information, and contact information for employees and other know-how and confidences of ADP and its businesses (collectively referred to as "Proprietary Information.")

2

(Pl. Br. at 17). Plaintiff further asserts that Jacobs had "substantial and direct contact" with current and potential clients, ADP employees, and marketing partners and alleges that he was given access to Proprietary Information to carry out these responsibilities. (Pl. Br. at 18). However, Defendant denies that the training he received was specialized and that he ever had access to any of this Proprietary Information. (Def. Br. at 4).

In September 2013, Defendant accepted stock through a program called the ADP 2008 Omnibus Award Plan. (Pl. at 10-11). Accepting stock through this plan required accepting the terms of the Restrictive Covenant Agreement ("Restrictive Covenant"), which included a non-competition clause purporting to restrict Defendant from working for any of Plaintiff's competitors for twelve months after termination in "the Territory." (Pl. Br. at 11). The Restrictive Covenant additionally included clauses purporting to control Defendant's post-termination interactions with current, past, and future clients and to restrict Defendant's use and disclosure of confidential information and trade secrets. (Pl. Br. at 13-15).

Subsequently, ADP terminated Defendant from employment. He was then offered a Letter Agreement and Release ("Letter Agreement") which purports to restrict Defendant from "competing with ADP in the territory in which he worked . . . [and] soliciting ADP's clients, prospective clients, vendors, marketing partners, and business partners" through September 11, 2016, the date of his last severance payment. (Pl. Br. at 19).

Plaintiff alleges that Defendant breached the terms of the various agreements. (Pl. Br. at 19). Plaintiff asserts that Defendant has taken a similar position, in the same territory, with a direct competitor and has solicited ADP's clients and prospective clients. (Pl. Br. at 19). Defendant argues that although he has taken a sales position with Oasis, a competitor, he has not contacted any of his former clients, nor does he currently have any clients at Oasis. (Pl. Br. at 5). He also

3

states that because ADP's client base is enormous and he does not possess a client list, he cannot possibly know whether or not a company is an ADP client. (Def. Br. at 5). He is still training at Oasis, and his job does not require him to use or disclose any ADP trade secrets or confidential information. (Def. Br. at 5).

On June 2, 2015, Plaintiff filed a Complaint against Defendant alleging breach of contract, breach of fiduciary duty, and unfair competition. (Compl. at 21-25). In addition to the Complaint, Plaintiff filed an application for a temporary restraining order and preliminary injunction. (ECF No. 1). This Court denied Plaintiff's request for temporary restraints, finding that, Plaintiff preliminarily failed to convince the Court that it will be irreparable harmed because only a mere "risk" of harm exists. (Order, ECF No. 5). Thus, this Court concluded that the circumstances of this case were not so exigent as to warrant a temporary restraining order at that juncture. (Id.). Defendant filed his response to Plaintiff's application for a preliminary injunction on July 8, 2015, also arguing that Plaintiff has failed to meet the amount in controversy required for this Court's jurisdiction.

Plaintiff seeks to enjoin Defendant Jacobs from a number of work-related activities. That is, Plaintiff asks this Court to enjoin Defendant from working or performing services for any competitor of ADP, in the territory in and around Austin, Texas, for which he had responsibility while employed with ADP. Plaintiff also wishes to prevent Defendant from soliciting or contacting ADP's clients, prospective clients, vendors, marketing partners, business partners or ADP's employees. Further, Plaintiff requests an order enjoining Jacobs from violating the terms of the agreements at issue and enjoining Jacobs from using or disclosing ADP's confidential, proprietary, or trade secret business information or property. Finally, Plaintiff seeks to enjoin Defendant from interfering in any way with any current contractual or any client, prospective

4

client, or marketing partner. Defendant opposes Plaintiff's application for a preliminary injunction arguing that Plaintiff has failed to satisfy the required elements for injunctive relief—namely, Plaintiff has failed to prove it will have a likelihood of success on the merits and has failed to prove any irreparable harm will result absent an injunction. More specifically, at the hearing held before this Court on July 20, 2015, Defendant argues that any covenant not to solicit *prospective* clients is unenforceable and no irreparable harm will result from Defendant maintaining his employment with Oasis.

## II. LEGAL STANDARD

Preliminary injunctions are extraordinary remedies that are not routinely granted. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004). The decision to grant a preliminary injunction is within the sound discretion of the district court. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 394 (2006); *see, e.g., Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). The Court examines the following four factors in determining whether injunctive relief should be granted:

> (1) whether the movant has shown a reasonable likelihood of success on the merits;
> (2) whether the movant will be irreparably harmed by denial of the injunctive relief sought;
> (3) whether the injury to the movant in the absence of injunctive relief outweighs the possible harm to the non-movant if the injunction is granted; and
> (4) the impact of a preliminary injunction on the public interest.
> *Abbott Labs.*, 452 F.3d at 1334; *see, e.g., Nat'l Steel Car*, 357 F.3d at 1324-25.

The movant herein bears the burden of demonstrating that the injunction it seeks should issue. *See, e.g., Abbott Labs.*, 452 F.3d at 1334. "[A] movant cannot be granted a preliminary injunction

5

unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com*, 239 F.3d at 1350 (emphasis in original). However, the Court must generally weigh all four factors in determining whether to grant an injunction. *See id.; Novartis Corp. v. Teva Pharms. USA, Inc.*, Nos. 04-4473, 06-1130, 2007 WL 1695689, at *3 (D.N.J. June 11, 2007).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

As this Court previously noted, there are three contracts at issue in this case; the Sales Representative Agreement, the Restrictive Covenant, and the Letter Agreement. Defendant contends the enforceability of these agreements as to: 1) the Restrictive Covenant—claiming because Defendant was terminated, the Covenant is unenforceable—and 2) the Non-Compete provisions—as they relate to prospective clients—are unenforceable. For Plaintiff to succeed on its breach of contract claim[1], the various agreements must be enforceable. The Court finds that each are enforceable to the extent they do not attempt to restrain Defendant from soliciting prospective clients.

Pursuant to New Jersey law, an agreement restricting an employee's ability to compete with his employer after the termination of his employment will generally be found to be reasonable and, thus, enforceable " 'where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public.' " *Solari Industries, Inc. v.*

---

[1] Defendant does not contend that Plaintiff is unlikely to succeed on its breach of fiduciary duty claim or unfair competition claim.

6

*Malady,* 55 N.J. 571, 576, 264 A.2d 53 (1970)). To minimize the hardship imposed on the employee, the geographic, temporal and subject-matter restrictions of an otherwise enforceable agreement not to compete will be enforced only to the extent reasonably necessary to protect the employer's legitimate business interests. *Campbell Soup Co. v. Desatnick,* 58 F. Supp. 2d 477, 488-89 (D.N.J. 1999) *quoting Coskey's Television & Radio Sales and Service, Inc. v. Foti,* 253 N.J.Super. 626, 634, 602 A.2d 789 (App.Div.1992)(citing *Solari,* 55 N.J. at 585, 264 A.2d 53.). New Jersey courts "recognize as legitimate the employer's interest in protecting trade secrets, confidential information, and customer relations," and also that "employers may have legitimate interests in protecting information that is not a trade secret or proprietary information," such as "highly specialized, current information not generally known in the industry, created and stimulated by the research environment furnished by the employer, to which [an] employee has been 'exposed' and 'enriched' solely due to his employment." *Ingersoll–Rand Co. v. Ciavatta,* 110 N.J. 609, 628, 542 A.2d 879 (1988).

However, a restrictive agreement will not be enforced "merely to aid the employer in extinguishing competition, albeit competition from a former employee." *Id.* at 635, 542 A.2d 879. New Jersey courts recognize that restrictive covenants "clearly limit an employee's employment opportunities and in many instances probably interfere with an employee securing a position in which he could most effectively use his skills, at the same time depriving society of a more productive worker." *Id.* at 639, 542 A.2d 879. This is particularly true given that "knowledge, skill, expertise, and information acquired by an employee during his employment become part of the employee's person" and that "an employee can use those skills in any business or profession he may choose, including a competitive business with his former employer." *Id.* at 635, 542 A.2d 879. "Accordingly, courts must evaluate the reasonableness of [a restrictive covenant] in light of

the individual circumstances of the employer and employee" and "balance the employer's need for protection and the hardship on the employee that may result." *Campbell Soup Co. v. Desatnick*, 58 F. Supp. 2d 477, 489 (D.N.J. 1999) *quoting Id.*

With this framework in mind, the Court is convinced that Plaintiff has proven the restrictive covenant at issue is, with one exception, reasonable. That is, Plaintiff has failed to convince this Court that restricting Defendant from soliciting prospective clients—of which Defendant did not gain knowledge of through ADP—is a reasonable covenant provision. A prohibition in a covenant such as the one at issue, "to the extent it covers prospective customers ... is overbroad and, thus, unenforceable." *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 298, 666 A.2d 1028, 1039-40 (Ch. Div. 1995) *citing Coskey's T.V.* 253 *N.J.Super.* 626, 638-39, 602 *A.*2d 789. Moreover, Defendant's solicitation of prospective clients in violation of his non-compete agreement prior to ADP's knowledge of these clients would not provide a legitimate basis for preventing Defendant's subsequent service to these clients. For this reason, Defendant cannot be enjoined from soliciting prospective clients in this regard.

However, prospective clients aside, Plaintiff has articulated all of its corporate interests in enforcing the remaining non-competition aspects of the agreement at issue such as protecting its interests in relationships with clients from improper competition or harm to its goodwill, as well as protecting confidential information. (Pl. Br. at 26). Defendant's argument that the agreement at issue is not enforceable because Defendant was terminated from employment for poor performance does not convince the Court otherwise. Here, it cannot be said that the one-year limitation is onerous or unreasonable, nor that the 75 mile radius is overbearing because Jacob's hardship in finding work outside the radius is fair and plausible. Indeed, the covenant in question protects the legitimate interests of the employer while imposing no *undue* hardship on Jacobs

(particularly in light of his severance package and ability to obtain other work), and is not injurious to the public in any articulated way. *Cmty. Hosp. Group, Inc. v. More*, 183 N.J. 36, 869, 897 A.2d 884 (N.J.2005).

Given in part that this Court makes the preliminary finding that the restrictive covenant is enforceable with one exception, upon review of the Complaint, it is likely that Plaintiff will succeed on his claims for; breach of contract, breach of fiduciary duty, and unfair competition. Indeed, it is undisputed that Defendant breached his agreements with ADP. Defendant's only remaining argument to the contrary in this regard relates to Plaintiff's harm, i.e. a question of damages. That is, Defendant claims that Plaintiff has failed to show it lost customers, sales or is in danger of losing such. (Def. Br., at 9). Defendant argues that Plaintiff has only proven that Defendant now works for Oasis, a competitor, which in and of itself is insufficient. (Id. at 10). However, Defendant does not deny that he is in direct violation of a restrictive covenant. Because Plaintiff has alleged damages including but not limited to lost profits, Plaintiff is likely to succeed on most of its claims surrounding the breach of a restrictive covenant and various clauses therein.

**B. Irreparable Harm**

To warrant the issuance of an injunction, a plaintiff must establish more than a *risk* of irreparable injury, and rather must demonstrate "a clear showing of *immediate* irreparable injury." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 225 (3d Cir. 1987)) (emphasis added). The Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where *either* or both of these prerequisites are absent." *Id.* at 197 (emphasis added) (quoting *In re*

*Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982)); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989); *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987); *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir.1984). The Court will address irreparable harm as it relates to each restraint Plaintiff seeks.

### 1. Enjoining Jacobs from Working for Competitor, Oasis

Plaintiff argues that if Jacobs is not restrained from competing with Plaintiff, it will suffer loss of goodwill and loss of control over its reputation with respect to its customers and competitors. The Third Circuit recognizes that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir.1998). Should Jacobs start communicating with vendors and other business entities on behalf of his new employer, when just months ago he was likely contacting these same entities on behalf of Plaintiff, there is of course a risk that this will affect these parties' perception of Plaintiff's industry reputation. However, Plaintiff has failed to convince the Court that Defendant—who admittedly is only in the training stages of his new employment—should be enjoined from working for Oasis entirely at this juncture. In other words, as Defendant has not even formally begun his work for Oasis, there is no immediate and emergent harm.

To the extent Defendant will have the ability to engage in the activities discussed below in violation of his restrictive covenant, such as using confidential information or interfering with proprietary customer relationships within the pertinent territory, he will be enjoined. But Plaintiff will not be enjoined from working for Oasis all together, to the extent it will not violate this Court's further order. Ultimately, without any evidence that Defendant is currently, or, in the immediate

future, likely to engage in activities solely through his employment alone, which will cause Plaintiff loss of control of reputation, loss of trade, and loss of goodwill, the Court cannot find immediate irreparable harm and must deny Plaintiff's injunction in this regard. *Continental Group,* 614 F.2d at 359 ("[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do."). That is, any imminent injury has not been established as the injury must be a *presently* existing threat, and not a remote or speculative possibility of future harm as is the case here. *Acierno v. New Castle County,* 40 F.3d 645, 655 (3d Cir.1994) (emphasis added).

## 2. Enjoining Jacobs from Soliciting or Interfering Clients, Vendors, ADP Employees etc.

Plaintiff seeks to restrain Jacobs from soliciting or inducing clients, vendors, employees of Plaintiff etc. However, Jacobs maintains that he has not, and is not, soliciting employees of Plaintiff.[2] For reasons juxtaposed to those just discussed, the Court determines that if Jacobs is not restrained from violating the non-solicitation provision, prospective clients excluded, Plaintiff's reputation and goodwill will be damaged since its competitors and clients will likely view any "defection" of employees to a competitor in a negative light. This is because there is evidence that Jacobs has already contacted clients he learned of through his ADP employment, and presumably has a number of others in mind he will contact. This produces a sense of immediacy rather than a mere risk for this Court. Accordingly, the Court finds that if Jacobs is

---

[2] While the Court remains cognizant that a preliminary injunction is not issued when there are disputed issues of fact, *Charles Simkin & Sons, Inc. v. Massiah,* 289 F.2d 26, 29 (3d Cir.1961), because Defendant has conceded he is in fact working for a competitor, a preliminary injunction is warranted.

11

not enjoined from soliciting clients, vendors and ADP employees, Plaintiff faces a risk of immediate, irreparable harm to its goodwill and reputation.

### 3. Enjoining Jacobs from Using ADP's Propriety Information

In the context of non-competition agreements, irreparable injury may be shown if the former employee may "avail himself of sensitive product strategies both as to development and marketing," which may be of extreme value to the competitor. *Bausch & Lomb Inc. v. Smith*, 630 F.Supp. 262, 265 (W.D.N.Y.1986). *See also Manhattan Associates, Inc. v. Ruderman*, 2005 WL 2290297 (D.N.J. 2005). Plaintiff has succeeded in this regard. Plaintiff alleges that Defendant, over the course of eighteen years, has had access to and possessed ADP's business methods, procedures, pricing and marketing strategy, client information, marketing partner information, and many more items they categorize as "proprietary information." (Pl. Br. at 17). To the extent Defendant has in his possession, custody, or control, any ADP property, included but not limited to confidential information, he shall be required to return said property for the reasons previously discussed, i.e. harm to Plaintiff's goodwill. Further, because the Court finds Plaintiff, as the moving party has demonstrated an "imminent threat of disclosure" of trade secrets given Defendant's employment posture, irreparable harm will result if Defendant is not strictly enjoined from disclosure. *E.R. Squibb & Sons, Inc. v. Hollister, Inc.*, 1991 WL 15296 (D.N.J.1991) (emphasis added). Such was the previous holding of this Court, concluding "irreparable harm exists to the extent that Defendants have retained any [] Proprietary Information" but "much, if not all, of the immediate irreparable harm caused by Defendants' breach of their confidentiality agreements was cured pursuant to the Court's [previous] Orders, requiring Appellees to
12

immediately return all Huff Proprietary Information to Plaintiffs." *W.R. Huff Asset Mgm't Co., L.L.C. v. Harmonay,* No. 06–5101, slip. op. at 14 (D.N.J. Nov. 27, 2006).

### C. Balance of Interests

The balance of interests is tantamount to the Court's finding in this case. That is, if the Court enjoins Jacobs from working for Oasis for one year, he will, obviously, suffer harm. He will not be able to work at the job of his choice. *Compare Cf. Wright,* 2 F.Supp.2d at 709 (noting that an employee "does not have a right to the ideal job, but rather, to be able to earn a livelihood"). With this in mind, this Court has struck a balance between the interests of the employer and that of Jacobs given the facts surrounding this case, and the very little evidence of Jacob's actions which may lend to irreparable harm. That is, the Court will permit, contrary to the restrictive covenant, Defendant to maintain his job with Oasis but enjoins him from engaging in the myriad of violations under provisions such as the non-solicitation provisions and restrict the disclosure of proprietary information. This is particularly in light of the fact that Jacobs was terminated and did not resign or leave on his own accord. Similarly, the employer ADP, as a company—in this case, a very successful company, it appears—will be able to financially survive an employee's leaving for a competitor. *See e.g. Advanced Fox Antenna, Inc. v. Csaszar,* 1999 WL 54567, at *3 (E.D.Pa. Jan. 29, 1999) ("I conclude that granting plaintiff's preliminary injunction motion would impose greater harm upon defendant, an individual who would be unable to work in her chosen profession for a year, than that which would be imposed on plaintiff by denying one."). On balance, this Court finds appropriate that while Jacobs shall be enjoined from many activities, he will not be enjoined from working for Oasis.

**D. Public Interests**

Although it is in the public interest to protect client goodwill in which businesses, such as ADP, have invested, it is not in the public interest to enjoin an individual from obtaining *employment alone* which would neither pose an immediate threat to this goodwill, nor to many other legitimate business interest of a previous employer. Although this matter is a private dispute between private parties, the Court nevertheless finds that issuance of an injunction is in the public interest in some regards. *See Score Board Inc. v. Upper Deck Co.,* 959 F.Supp. 234, 240 (D.N.J.1997). While the public has an interest in free competition, its interest is also furthered by protection of private contractual rights and particular confidential information. This Court has previously held, and remains cognizant of the fact that "[j]udicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships." *Wright Med. Tech., Inc. v. Somers,* 37 F.Supp.2d at 684 (citing *AmeriGas Propane, Inc. v. Crook,* 844 F.Supp. 379, 390 (M.D.Tenn.1993). With this in mind however, the Court determines that the public interest is best served by enforcement of the various agreements in most aspects via preliminary injunctive relief, but the public interest is not best served by terminating Jacob's employment completely.

**E. Amount in Controversy**

Defendant also argues that Plaintiff has failed to meet the amount in controversy requirement for this Court's subject matter jurisdiction. Mindful of the Court's continuing obligation to exercise proper jurisdiction, the Court addresses this argument, but finds that Defendant has failed to convince the Court as to same. In injunctive actions, it is settled that the amount in controversy is measured by the value of the right sought to be protected by the equitable

14

relief. *See Smith v. Adams,* 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895 (1889); *Spock v. David,* 469 F.2d 1047, 1052 (3rd Cir.1972) ("In cases where there is no adequate remedy at law, the measure of jurisdiction is the value of the right sought to be protected by injunctive relief."), *rev'd on other grounds Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). In other words, "it is the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined that is the yardstick for measuring the amount in controversy." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3708 at 143–44 (2d ed. 1985) (citations omitted). Here, if Defendant were to solicit and gain the business of ADP's current clients he has built relationships with throughout his 18 years of employment, absent an injunction, the Court is convinced that that damage value is or could be over $75,000. For this reason, Defendant's argument is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's application for a preliminary injunction is **GRANTED IN PART AND DENIED IN PART.** An appropriate Order accompanies this Opinion.

Date: August 5, 2015

José L. Linares
United States District Judge